## In re RUBIN.

(District Court, S. D. New York. February 14, 1912.)

1. INJUNCTION (§ 223*)—VIOLATION OF ORDER—SALE OF LAMPS.
   The fact that the defendant in a civil suit had been forbidden by the court from selling lamps of a certain pattern did not prevent him from selling lamps of that sort which he had bought from the plaintiff.
   [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 223.*]

2. INJUNCTION (§ 230*)—VIOLATION OF ORDER—EVIDENCE—SUFFICIENCY.
   On a proceeding for alleged violation of an order of court forbidding the sale of lamps of a certain pattern, evidence examined, and held insufficient to show that defendant had violated the order.
   [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 230.*]

Application to punish Louis Rubin for a criminal contempt of court. Dismissed.

This proceeding originated in the Circuit Court, and was based upon an alleged violation of an order of that court forbidding the sale of lamps of a pattern known as "Solar Light."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John E. Walker, Asst. U. S. Atty.

Gennert & Gennert, for Rubin.

LACOMBE, Circuit Judge. [1] The original subject-matter of complaint comprised 3 lamps with nickel casings. The affidavits submitted being conflicting, the court ordered the testimony to be taken in open court. The matter coming on during the last week of the existence of the Circuit Court and other engagements pressing, the court directed that the testimony be taken before a referee sitting with a jury. When the testimony was complete, the court instructed the jury to answer four specific questions, which they did. Their answers to the first three of these shows that they had reached the conclusion that defendant had sold the 3 lamps—indeed, he did not dispute that proposition; that they were of the sort forbidden by the order, but that he had bought them from the plaintiff in the civil suit, or from its agent. Lamps thus purchased he would be free to sell again. This finding of the jury is accepted, and these 3 lamps are out of the case.

[2] By their answer to the fourth question the jury found that Rubin had also sold a lamp of the kind forbidden by the order, with an enamel casing, known as "Exhibit Smith Lamp." He conceded the sale of this lamp, but insisted that he was informed at so late a date that such sale was to be made a subject of inquiry that he had not had a fair opportunity to present evidence to the jury to show that he had bought this lamp also from plaintiff or its agent. He submitted an affidavit, which the court did not pass upon, preferring to examine the question upon testimony produced by both sides in open court and tested by cross-examination. Such a hearing was had, and upon the testimony there taken the case now comes up for final disposition.

The testimony is very conflicting. Rubin insists that the Smith lamp was delivered to him, by plaintiff or its agent, as one of 50 lamps which he had ordered. The 50 lamps were delivered in two lots; one containing 7 lamps, and the other (delivered much later) containing 43 lamps. The sale of 50 lamps and the delivery in two lots, of 7 and 43, one sent by the Triple Air Light Company, plaintiff's agent, the other sent by the Solar Light Company, at the request of the Triple Air Light Company, is conceded; in fact, proved by the government's proof. The real point in dispute is whether the whole 50 were nickel lamps, or whether there were some enamel lamps among them. If there was no enamel lamp among these 50, defendant has not shown that the "Smith" lamp was bought from plaintiff or its agent; and since he admits the sale, and it is manifestly of the kind covered by the injunction order, disobedience of that order would be proved.

An employé of the Triple Company, who took charge of lamp stock and kept the stock book, testified to his method of doing his work, and produced his book of original entries, from which he could tell, upon being told the series number of any lamp, whether it was nickel or enamel. Another employé of the same company testified that he made up the two packages composing the lot of 7 lamps which went to Rubin. He produced his book of original entry—the "Lamp Book" con-

taining what purported to be an entry in his own handwriting, giving the numbers of the 7 lamps. The entry is criticised by defendant because of some indications that the paper had been at some time gone over with a rubber eraser and numbers subsequently written. It is not necessary to go into that matter, however, because in its present condition one number is illegible, and as to that one the stock clerk was unable to state whether the lamp was nickel or enamel.

As to the lot of 43, the president of the Solar Company testified on direct examination that they were all nickel, not because he had packed them or seen them packed, but because he had, at that time, no enamel lamps of this type in stock. But upon cross-examination he admitted that before that time his company had taken over from another company (the Incandescent Supply Company) about 100 white enamel lamps of the same kind as the Smith lamp, with some trifling differences in the gold stripe on the smoke bell. Without further discussing the evidence it is sufficient to say that the court is not satisfied that the prosecution, which has the burden of proof on the whole case, has established the fact of disobedience of the order by sales of the 4 lamps above referred to.

The attachment is vacated, and proceeding is dismissed.